IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TAMMIE HOLMAN,

    *Plaintiff,*

vs.

FIFTH THIRD BANK, N.A., *et al.*,

    *Defendants.*

Case No. 21-CV-02247-EFM-TJJ

**MEMORANDUM AND ORDER**

Plaintiff Tammie Holman's story begins with her purchase of a Kia Optima. Plaintiff made a down payment and began to pay back the balance with regular monthly payments, which she did without incident for a time thereafter. Things soon turned sour though, as they often do before they reach this Court. Plaintiff was surprised to discover that she was delinquent on several payments and that the amount required of her each month had greatly increased. According to Plaintiff, Defendant Fifth Third Bank, N.A., by then the lienholder on Plaintiff's Kia, started charging her for additional insurance on the vehicle, even though she alleges it was always sufficiently insured. Plaintiff alleges Defendant G.D. Van Wagenen Financial Services, Inc., in providing insurance monitoring services to Fifth Third, misrepresented that Plaintiff's Kia was uninsured and wrongfully "foisted" lender-placed insurance on her Kia, the charges for which

eventually landed in Plaintiff's lap.[1] After what appears to be a bitterly fought but ultimately unsuccessful battle with several customer service departments, Plaintiff seeks relief from this Court. Against Van Wagenen, she alleges violations of the Kansas Consumer Protection Act ("KCPA"), conversion, unjust enrichment, negligence. She also seeks a declaratory judgment that Van Wagenen wrongfully placed lender-placed insurance on her vehicle. Van Wagenen moves to dismiss all counts alleged against it. For the reasons set out below, the Court grants in part and denies in part Van Wagenen's Motion to Dismiss (Doc. 29).

## I. Factual and Procedural Background[2]

In 2016, Plaintiff purchased her Kia Optima from Laird Noller Automotive pursuant to a retail installment sales contract. Under that contract, she paid $2,500 down towards a total sale price of $19,453.75. The contract provided that Plaintiff would repay the remaining balance, plus an annual rate of 3.89% interest, over the course of 75 months with a payment of $226.05 per month. The contract further specified:

> You [Plaintiff] agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we [the current lienholder] may, if we choose, buy physical damage insurance.[3]

Plaintiff states that she maintained physical damage insurance on her Kia at all times relevant to this lawsuit.

After Plaintiff purchased the Kia, Laird Noller assigned its interest on the contract to Fifth Third Bank. Fifth Third, sometime prior to the events of this lawsuit, contracted with Van

---

[1] Pl.'s Compl., Doc. 1, at ¶ 3.

[2] The following facts, taken from Plaintiff's Complaint, are assumed true for the purpose of ruling on Van Wagenen's Motion to Dismiss under Rule 12(b)(6).

[3] Pl.'s Compl., Doc. 1, at ¶ 24.

Wagenen to provide insurance monitoring services for its book of automotive loans, including Plaintiff's. Plaintiff states that Fifth Third and Van Wagenen terminated their contractual relationship in or around March 2019.

In April 2019, Plaintiff was surprised to receive a Credit Karma report stating that she was delinquent on three or four payments to Fifth Third. Because Plaintiff had set up automatic car payments of the appropriate amount under the contract, she could not understand how her payments were delinquent. Plaintiff called Fifth Third for clarification and, after what she describes as an "endless, time-consuming, futile, and fundamentally unfair process," Fifth Third informed Plaintiff that she had incurred lender-placed insurance ("LPI") on her Kia.[4]

LPI is exactly what its name suggests: insurance placed on an asset by a lender who has a financial interest in the asset. A lender typically applies LPI to an asset when the debtor's own insurance as to that asset has lapsed or is deficient in some way, thus allowing the lender to protect its financial interest. This is what is contemplated in the provision of Plaintiff's original contract that reads, "[i]f you do not have this insurance, we may, if we choose, buy physical damage insurance."[5] The problem, according to Plaintiff, is that her insurance on her Kia never lapsed and thus LPI was unnecessary.

Plaintiff believes that Fifth Third first applied her scheduled automatic payments to the cost of this LPI, leaving her original car payment and any other charges in excess of her scheduled payments unpaid and delinquent. Plaintiff alleges she has since incurred many months of LPI-related charges and late charges, beginning in January 2019 and continuing to the present. Though

---

[4] Pl.'s Compl., Doc. 1, at ¶ 48.

[5] *Id.* at ¶ 24.

Plaintiff sought to rectify the situation directly with Fifth Third, she states she was unable to penetrate the "faceless bureaucracy" that characterizes Fifth Third's customer service operations.[6]

Plaintiff believes this whole unfortunate process began with the actions of Van Wagenen. Van Wagenen, pursuant to its contract with Fifth Third, was tasked with monitoring Fifth Third's portfolio of automotive loans for any problems that might affect Fifth Third's interest in a particular loan, such as a deficiency in physical damage insurance on the vehicle. Plaintiff alleges that despite the fact that she had sufficient physical damage insurance on her Kia, Van Wagenen wrongfully concluded her Kia was uninsured. Plaintiff's Complaint does not offer precise dates as to when exactly Van Wagenen made this conclusion nor when Van Wagenen acquired the LPI for Plaintiff's Kia. Still, Plaintiff does allege her delinquency owing to the increased charges of the LPI began in or around January 2019. According to Plaintiff, sometime during this period, Van Wagenen acquired LPI for the Kia, and passed the cost of the LPI on to Fifth Third, who in turn passed the cost on to Plaintiff.

Plaintiff seeks relief from this Court for these alleged wrongs. As to Van Wagenen, Plaintiff alleges six counts of wrongful conduct: two counts that allege Van Wagenen violated the KCPA, one count alleging conversion, one count alleging unjust enrichment, one count alleging negligence, and one count seeking a declaratory judgment that Van Wagenen wrongfully placed LPI on her Kia. Van Wagenen now moves to dismiss every count alleged against it under Rule 12(b)(6).

---

[6] *Id.* at ¶ 8.

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[10] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12]

## III.     Analysis

As noted above, six counts of Plaintiff's Complaint relate to Van Wagenen. Five of these allege violations of Kansas law, specifically that Van Wagenen: (1) violated the KCPA on or after July 1, 2019; (2) violated the KCPA before July 1, 2019; (3) unlawfully converted Plaintiff's funds; (4) was unjustly enriched by Plaintiff; and (5) was negligent with respect to Plaintiff. Plaintiff's

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678.

[12] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

sixth count as to Van Wagenen seeks a declaratory judgment that Van Wagenen wrongfully placed LPI on Plaintiff's Kia. The Court examines each of these in turn.

**A.      KCPA Claims**

*1.      On or After July 1, 2019*

Plaintiff's claim that Van Wagenen violated the KCPA on or after July 1, 2019, fails based solely on the facts alleged in her Complaint. A KCPA claim requires, at base, an allegation that the defendant engaged in deceptive or unconscionable acts or practices.[13] All deceptive and unconscionable practices that Van Wagenen allegedly committed occurred in the context of its contractual relationship with Fifth Third, such as its alleged willful misrepresentation to Fifth Third that Plaintiff's Kia was not sufficiently insured and allegedly frivolous placing of LPI on the Kia. The problem for Plaintiff is that she herself states this relationship between Van Wagenen and Fifth Third *ended* in or around March 2019, and thus so did Van Wagenen's conduct that was alleged to violate the KCPA. This is at least three full months prior to July 1, 2019, the date Plaintiff herself designated as what may be called the "start date" for this count. Though "in or around" gives Plaintiff some leeway as to when Van Wagenen and Fifth Third terminated their relationship, that leeway is not so great as to encompass a date at least three full months later. Thus, any deceptive or unconscionable practice Van Wagenen is alleged to have committed must have occurred prior to July 1, 2019, leaving a KCPA claim based on conduct on or after that date with no legal basis.

Plaintiff has four arguments against this conclusion, but none are persuasive. First, Plaintiff contends that the Court, in dismissing this count, is inappropriately viewing Van

---

[13] *See Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 314 P.3d 852, 863 (2013) (citing K.S.A. 50-626(a); K.S.A. 50-627(a)).

Wagenen's potential KCPA liability wholly through the lens of its relationship with Fifth Third. Further, Plaintiff states that even if the Court takes that view, Kansas courts have held that the termination of a legal relationship does not cut off KCPA liability. Plaintiff cites the Kansas Court of Appeals decision in *Consolver v. Pistotnik*[14] in support of this proposition. But *Consolver* is inapposite. It is true that in *Consolver*, the defendant was alleged to have violated the KCPA after his legal relationship with Plaintiff ended.[15] But there, the acts alleged to have violated the KCPA, the defendant's filing of an attorney's lien, also occurred *after* that relationship ended.[16] Here, by contrast, Van Wagenen's acts that allegedly violated the KCPA occurred during its relationship with Fifth Third. The Court is not unduly focusing on Van Wagenen's relationship with Fifth Third nor suggesting that any potential liability for Van Wagenen necessarily flows from that relationship. Rather, the Court focuses, as it must, on the alleged *acts* which predicate Van Wagenen's KCPA liability, all of which are alleged to have occurred before it terminated its relationship with Fifth Third and thus prior to Plaintiff's self-imposed start date for this count.

Second, Plaintiff argues that discovery is needed to determine the precise nature of the relationship between Van Wagenen and Fifth Third on or after July 1, 2019. She suggests that perhaps Van Wagenen had ongoing reporting duties that continued after this date, that Fifth Third may have contacted Van Wagenen after this date regarding Plaintiff's complaints, or that Van Wagenen may have otherwise been involved with Fifth Third and Plaintiff's complaints after July 1, 2019. All of this asks the Court to speculate as to facts not alleged in the Complaint. The Court

---

[14] 2017 WL 2715122 (Kan. Ct. App. 2017).

[15] *Id.* at *4 ("Consolver's remaining KCPA claim rests on the attorney's lien Pistotnik filed after he was terminated as counsel in the personal injury action.").

[16] *Id.*

refuses to do so.[17] Instead, looking to the plain allegations of the Complaint, the Court finds that it alleges no unlawful conduct on the part of Van Wagenen after Plaintiff's self-imposed start date for this count.

Plaintiff's third and fourth arguments as to this count follow a similar vein in that they both focus on the effects of Van Wagenen's alleged wrongful conduct. The LPI and the resulting charges to Plaintiff would have continued for months after it was placed, likely even past July 1, 2019. But this is not a proper basis for an independent KCPA claim based on deceptive or unconscionable *acts* after that date. Plaintiff has not plausibly alleged any deceptive or unconscionable acts or practices of Van Wagenen after her self-imposed start date for this count. Therefore, this count must be dismissed for failure to state a claim.

    2.    *Before July 1, 2019*

Plaintiff plausibly alleges a KCPA claim for Van Wagenen's conduct before July 1, 2019. To state a claim under the KCPA, a plaintiff must plausibly allege that she is a consumer and the defendant is a supplier under the KCPA, that they were involved in a consumer transaction, that the plaintiff is aggrieved by the defendant's alleged violations, and that the defendant's actions were deceptive or unconscionable.[18] Plaintiff alleges each of the above elements in her Complaint, including that Van Wagenen's actions were both deceptive and unconscionable. Van Wagenen offers three arguments as to why these allegations should not survive its motion to dismiss.

---

[17] *Webb v. Convergent Outsourcing, Inc.*, 2012 WL 162394, at *1 (D. Kan. 2012) ("Allegations that raise the specter of mere speculation are not enough.") (citation omitted).

[18] *Via Christi Reg'l Med. Ctr.*, 314 P.3d at 863 (citations omitted). *See also Robbins v. Dyck O'Neal, Inc.*, 447 F. Supp. 3d 1100, 1108 (D. Kan. 2020) (citations omitted).

Van Wagenen first focuses on the "supplier" element of the KCPA claim. Curiously though, Van Wagenen does not argue that it is not a supplier under the KCPA.[19] Instead, Van Wagenen states that because Fifth Third Bank could not be considered a "supplier" under the pre-July 1, 2019 version of the KCPA[20] and Van Wagenen's alleged conduct occurred in the context of its relationship with Fifth Third, it cannot be liable under the KCPA. In essence, then, Van Wagenen claims that it shares Fifth Third's exclusion from the definition of "supplier" under the pre-July 1, 2019 KCPA simply because its own alleged KCPA violation occurred as part of its contractual duties to Fifth Third. Van Wagenen, however, offers no support under Kansas law for this proposition. The Court therefore cannot conclude that Van Wagenen is immune from liability under the KCPA simply because its alleged conduct occurred in the context of its relationship with Fifth Third Bank.

Van Wagenen next argues that Plaintiff failed to meet the heightened pleading standard required for allegations of deceptive acts or practices under the KCPA. Numerous decisions of this Court have held that allegations of deceptive trade practices under the KCPA are required to meet the heightened pleading standard for fraud under Rule 9(b).[21] Rule 9(b) requires a plaintiff

---

[19] Van Wagenen does make this argument in its reply brief. But this Court does not consider issues raised for the first time in a reply brief, and thus will not consider the merits of that argument. *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) ("Courts in this district generally refuse to consider issues raised for the first time in a reply brief."). *See also Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009); *Armstrong v. Genesh, Inc.*, 2011 WL 6151416, *1 (D. Kan. 2011).

[20] Prior to July 1, 2019, the KCPA excluded "any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution" from the definition of "supplier." K.S.A. § 50-624(l) (amended July 1, 2019). This Court routinely held, based on this language, that the KCPA did not apply to regulated banks. *See, e.g.*, *Kalebaugh v. Cohen, McNeile & Pappas, P.C.*, 76 F. Supp. 3d 1251, 1260 (D. Kan. 2015) (holding that "Discover Bank is *not* a supplier under the KCPA if it is subject to state or federal regulation"); *Kastner v. Intrust Bank*, 2011 WL 721483, at *2 n.3 (D. Kan. 2011) (noting that "K.S.A. § 50-624(l) appears to exclude banks and lending institutions that are subject to state and federal regulation from the definition of 'supplier' "). The amendment that removed this language effective July 1, 2019, is prospective only. 2019 Kan. Laws Ch. 66, § 17.

[21] *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003) (citation omitted); *Thompson v. Jiffy Lube*

alleging fraud to "state with particularity the circumstances constituting fraud."[22]  This means the plaintiff "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[23]

Plaintiff adequately sets forth each of these elements of Van Wagenen's alleged deceptive acts and practices in violation of the KCPA.  Plaintiff states that her delinquency on her payments as a result of the LPI began in or around January 2019.  A reasonable inference from this is that Van Wagenen's alleged false representation, which resulted in the LPI, must have occurred around this time as well.  There is not necessarily a physical "place" where this false representation occurred, but Plaintiff adequately alleges it took place in the context of Van Wagenen's contractual relationship with Fifth Third.  Plaintiff adequately identifies the contents of the alleged false representation and the identity of the party making such statements in alleging that Van Wagenen "[w]illfully misrepresent[ed] that Plaintiff did not possess sufficient insurance coverage," among other statements.[24]  Finally, Plaintiff states that, as a consequence of Van Wagenen's alleged false statement, she incurred additional fees associated with the LPI, as well as late charges and negative credit consequences.  Accordingly, Plaintiff's allegations of Van Wagenen's deceptive practices satisfy the requirements of Rule 9(b).

---

*Int'l, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007); *M.F. v. ADT, Inc.*, 357 F. Supp. 3d 1116, 1137 (D. Kan. 2018) (citation omitted), *aff'd sub nom. Frost v. ADT, LLC*, 947 F.3d 1261 (10th Cir. 2020).  *Contra Rogers v. Bank of Am., N.A.*, 2014 WL 3091925, at *3 (D. Kan. 2014) (concluding that the plaintiff's claim did not need to be pleaded with particularity based on the differences between a KCPA claim for deceptive acts or practices and a fraud claim).

[22] Fed. R. Civ. P. 9(b).

[23] *Marksberry v. FCA US LLC*, 481 F. Supp. 3d 1229, 1236 (D. Kan. 2020) (quoting *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1176 (D. Kan. 2017)).

[24] Pl.'s Compl., Doc. 1, at ¶ 167.

Van Wagenen's last argument in support of dismissing Plaintiff's KCPA claim is that Plaintiff has not plausibly alleged that it acted unconscionably. Plaintiff alleged that Van Wagenen acted unconscionably in placing frivolous LPI of her vehicle even though she had sufficient insurance coverage. The KCPA does not specifically define unconscionability, but rather instructs courts to "consider circumstances of which the supplier knew or had reason to know" including an enumerated list of possible circumstances.[25] Though none of those are applicable here, this is not fatal to Plaintiff's claim as this list is not meant to be exhaustive.[26] The Kansas Supreme Court has specified that unconscionability requires both supplier deception and unequal bargaining power favoring the supplier.[27] Recognizing that Plaintiff has adequately plead that Van Wagenen engaged in deception by willfully misrepresenting that her vehicle was uninsured, the Court looks to the "key concern" of whether there existed an imbalance of economic power between the parties.[28]

The Kansas Supreme Court has found that a supplier may engage in unconscionable conduct when it "fail[s] to ensure the accuracy of its charges to a consumer" because it can be "extremely difficult for a consumer to decipher and detect such inaccuracies."[29] Such a situation is made perhaps even more difficult when the charges reach the consumer indirectly through a different party. In these circumstances, a plaintiff may have had no knowledge of the role of the

---

[25] K.S.A. 50-627(b).

[26] *See id.* ("[T]he court shall consider circumstances of which the supplier knew or had reason to know, such as, *but not limited* to the following . . . .") (emphasis added); *see also Louisburg Bldg. & Dev. Co., L.L.C. v. Albright*, 45 Kan. App. 2d 618, 252 P.3d 597, 616 (2011) ([Plaintiff's] claims should not stand or fall based solely on the presence or absence of these statutory circumstances."), *rev'd in part on other grounds*, 2012 Kan. LEXIS 208 (2012).

[27] *State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 272 Kan. 1313, 38 P.3d 707, 713 (2002).

[28] *Tomlinson v. Ocwen Loan Servicing, LLC*, 2015 WL 7853957, at *4 (D. Kan. 2015).

[29] *Via Christi Reg'l Med. Ctr.*, 314 P.3d at 868.

original charging party, and therefore little or no power to influence it. Plaintiff alleges that any LPI-related charges were inaccurate because her Kia was sufficiently insured at all times. Plaintiff further alleges that though Van Wagenen was the source of the additional charges, it was Fifth Third as the consumer-facing entity that actually charged her, and thus she had no knowledge of Van Wagenen's role until many months after the LPI was wrongfully placed. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged facts that suggest she had no economic power with respect to Van Wagenen and that its alleged conduct in wrongfully placing the LPI was therefore unconscionable.

Curiously, Van Wagenen waits until its reply brief to argue that it did not engage in a "consumer transaction" with Plaintiff. Whatever the merits of that argument, the Court does not consider it at this time.[30] Thus, in sum, Plaintiff plausibly alleges that Van Wagenen violated the KCPA before July 1, 2019. Van Wagenen's motion to dismiss this claim for failure to state a claim is denied.

**B.  Conversion and Unjust Enrichment**

Van Wagenen's arguments for dismissal of Plaintiff's conversion and unjust enrichment claims are essentially the same. Van Wagenen argues that because both conversion and unjust enrichment require, at base, that the defendant received or took something from the plaintiff,[31] and

---

[30] *Liebau*, 176 F. Supp. 2d at 1244 ("Courts in this district generally refuse to consider issues raised for the first time in a reply brief.").

[31] Under Kansas law, conversion is "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels," including money, "belonging to another to the exclusion of the other's rights." *Bomhoff v. Nelnet Loan Servs., Inc.*, 279 Kan. 415, 109 P.3d 1241, 1246 (2005) (citation omitted). One element of unjust enrichment is that the plaintiff conferred a benefit on the defendant. *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 910 P.2d 839, 847 (1996) (quotation omitted).

Plaintiff never alleges that Van Wagenen received any money from Plaintiff, her claim fails to plausibly allege either conversion or unjust enrichment.

Van Wagenen is mistaken. Plaintiff allegations allow for the reasonable inference, which the Court is obligated to draw at this juncture,[32] that Van Wagenen received some of her payments, albeit indirectly. Plaintiff alleged that Van Wagenen, knowing the cost would be passed to Plaintiff, "assigned the Kia for LPI," "charged Fifth Third for this improper LPI," which then "charged Plaintiff."[33] Plaintiff further alleges that "Fifth Third and Van Wagenen . . . charged Plaintiff for that frivolous LPI."[34] Though Plaintiff states she paid Fifth Third directly, a reasonable inference based on this charging scheme is that at least a portion of Plaintiff's payments were passed on by Fifth Third and found their way into Van Wagenen's coffers. Thus, Plaintiff has plausibly alleged her claims of conversion and unjust enrichment. Van Wagenen's motion to dismiss these claims under Rule 12(b)(6) is denied.

**D.    Negligence**

Van Wagenen next argues that Plaintiff's allegations that it owed her a legal duty are conclusory, and thus her negligence claim must be dismissed for failing to plausibly allege that required element under Kansas law.[35] Plaintiff's allegation that "Van Wagenen had legal duties" to her is, admittedly, conclusory.[36] But the existence of a legal duty is a question of law,[37] and this

---

[32] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

[33] Pl.'s Compl., Doc. 1, at ¶ 183–86.

[34] Pl.'s Compl., Doc. 1, at ¶ 143.

[35] *See Schmidt v. HTG, Inc.*, 265 Kan. 372, 961 P.2d 677, 684 (1998) ("[N]egligence only exists where there is a duty owed by one person to another and a breach of that duty occurs.")

[36] Pl.'s Compl., Doc. 1, at ¶ 200.

[37] *Schmidt*, 961 P.2d at 693 (quotation omitted).

Court reviews the Complaint in its entirety to determine if Plaintiff has alleged sufficient facts to show the existence of a legal duty under Kansas law.

Plaintiff alleges that Van Wagenen was retained by Fifth Third to monitor insurance coverage on its book of automotive loans.  As part of this relationship, Plaintiff states that Van Wagenen monitored the insurance coverage on her Kia.  The relevant question, then, is whether these facts as alleged show that Van Wagenen owed Plaintiff a duty under Kansas law.  The parties do not offer, nor does the Court find, a Kansas case directly considering whether a company providing insurance monitoring services for a lender owes a duty of care to that lender's debtors as it monitors their insurance.  Thus, the Court looks to general principles of Kansas law regarding the existence of a legal duty to answer this question.

The Kansas Supreme Court has held that "[t]o find a legal duty to support a negligence claim, (1) the plaintiff must be a foreseeable plaintiff and (2) the probability of harm must be foreseeable."[38]  "A foreseeable plaintiff is one that is 'within the range of apprehension.' "[39]  *Berry v. National Medical Services, Inc.* is instructive on the question of whether Plaintiff was "foreseeable."  In that case, the Kansas Supreme Court found that the subject of random urinalyses conducted by the defendants was a foreseeable plaintiff because she was the "direct and immediate object of the Defendants' testing services."[40]  Similarly, Plaintiff was the "direct and immediate object" of Van Wagenen's insurance monitoring services.  Van Wagenen monitored, among others, Plaintiff's insurance on her vehicle to determine if that insurance was sufficient to protect Fifth Third's interest.  Plaintiff was within the "range of apprehension" if Van Wagenen concluded

---

[38] *Berry v. Nat'l Med. Servs., Inc.*, 292 Kan. 917, 257 P.3d 287, 290 (2011) (citations omitted).

[39] *Id.* (citation omitted).

[40] *Id.* at 291.

that her vehicle was insufficiently insured, and was therefore a foreseeable plaintiff. Likewise, the probability of harm to Plaintiff if Van Wagenen concluded that Plaintiff's vehicle was underinsured or uninsured was foreseeable. A conclusion by Van Wagenen that Plaintiff's vehicle was insufficiently insured would foreseeably lead to increased charges and fees assessed against Plaintiff. Accordingly, Plaintiff has alleged sufficient facts to support the existence of a legal duty on the part of Van Wagenen. Van Wagenen's motion to dismiss Plaintiff's negligence claim for failure to state a claim is denied.

### E.  Declaratory Relief

Finally, Van Wagenen asks this Court to dismiss Plaintiff's request for a declaratory judgment that any LPI placed on her Kia, and the associated fees and charges, was misplaced and improper. This Court's authority to provide such relief comes from the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."[41] Van Wagenen does not dispute that there is an actual controversy here, but instead asks the Court to exercise its discretion to dismiss Plaintiff's request for declaratory relief.

Even when an actual controversy exists between the parties, a district court may still decline to entertain the declaratory judgment action.[42] A court exercises its discretion in making this determination, considering the following factors:

---

[41] 28 U.S.C. § 2201(a).

[42] *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[43]

Van Wagenen argues for dismissal of Plaintiff's claim for declaratory relief based solely on its conclusion that such claim is "duplicative" of Plaintiff's other claims for relief.[44] Citing decisions from outside this district, Van Wagenen states that Plaintiff fails to identify "any issue for resolution by declaratory relief that cannot be resolved in the context of [her] separate claims."[45]

This Court has previously "decline[d] to accept [the] argument that declaratory judgments are improper when brought alongside claims that would resolve the same issues."[46] The Court reaffirms this decision now, and instead looks to the *Mhoon* factors in determining whether to entertain Plaintiff's action for declaratory relief.

As to the first factor, a declaratory judgment that any LPI was wrongfully placed would not settle the controversy. This is but one element of Plaintiff's several claims against Van Wagenen. On the second factor, however, a declaratory judgment would serve a useful purpose in clarifying the legal relation between Plaintiff and Van Wagenen. Specifically, a declaratory judgment would clarify whether Plaintiff has any legally relevant relation to Van Wagenen based on its alleged wrongful conduct. The third and fourth factors both favor allowing the declaratory

---

[43] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (alteration in original) (quotation marks and citation omitted).

[44] Def.'s Mem. in Supp., Doc. 30, at 12.

[45] *Cleveland v. Talent Sport, Inc.*, 2013 WL 2178272, at *3 (W.D. Okla. 2013).

[46] *Airtex Mfg., LLLP v. Boneso Bros. Constr., Inc.*, 2020 WL 4922192, at *13 (D. Kan. 2020).

action to proceed, as both are concerned about the effect of a declaratory judgment in federal court on parallel state court proceedings and there are no such proceedings here. Finally, the fifth factor likewise favors allowing the claim to proceed. While Plaintiff's separate claims will necessarily resolve the issue presented by this declaratory judgment action, Van Wagenen's alleged wrongful conduct in placing the LPI is the base of each of these claims and its resolution would be a step toward the ultimate resolution of each claim. Four out of five factors favor allowing Plaintiff's declaratory action to proceed. Van Wagenen's motion to dismiss on that count is therefore denied.

**IT IS THEREFORE ORDERED** that Defendant Van Wagenen's Motion to Dismiss (Doc. 29) is **GRANTED in part and DENIED in part.**

Count IV is dismissed as to Van Wagenen. All other counts remain.

**IT IS SO ORDERED.**

Dated this 30th day of November, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE